**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| Alrose Allegria LLC, | ) | Case No. 15-11760 (PB) |
| Debtor. | ) | (Jointly Administered) |
| Dagny Enterprises, LLC, *et al*., | ) | |
| Plaintiffs. | ) | Adv. Proc. No. 25-01124 (PB) |
| v. | ) | |
| Kenneth P. Silverman, *et al*., | ) | **FOR PUBLICATION** |
| Defendants. | ) | |

# DECISION ON HART'S ADMINISTRATIVE EXPENSE MOTION AND MOTIONS TO DISMISS ADVERSARY COMPLAINT

**APPEARANCES**:

LAW OFFICES OF JACOB FRYDMAN
*Counsel for Hart and Dagny Enterprises*
845 United Nations Plaza
New York, NY 10017
By: Jacob Frydman

LEECH TISHMAN ROBINSON BROG, PLLC
*Counsel for Hart and Dagny Enterprises*
885 Second Avenue, Fl. 3
One Dag Hammarskjold Plaza
New York, NY 10017
By: Steven B. Eichel
William Rome

RIMON P.C.
*Counsel for the Trustee and the Creditor Trust*
100 Jericho Quadrangle, St. 300
Jericho, NY 11753
By: Anthony C. Acampora
Ronald J. Friedman
Haley Trust

ZEICHNER ELLMAN & KRAUSE LLP
*Counsel for Flagstar*
730 Ellman & Krause LLP
730 Third Avenue
New York, NY 10017
By: Bryan D. Leinbach

CULLEN AND DYKMAN LLP
*Counsel for Rosenberg*
333 Earle Ovington Blvd., St. 2nd Floor
Uniondale, NY 11553
By: Andrew M. Thaler
Matthew G. Roseman

U.S. DEPARTMENT OF JUSTICE
*Counsel for the Office of the United States Attorney*
86 Chambers Street, Fl. 3
New York, NY 10007
By: Samuel Dolinger

U.S. DEPARTMENT OF JUSTICE
*Counsel for the United States Trustee*
1 Bowling Green
New York, NY 10004
By: Shara C. Cornell

STATE OF NEW YORK
*Counsel for the Office of the Attorney General*
28 Liberty Street
New York, NY 10005
By: Leo V. Gagion

**Hon. Philip Bentley**
**U.S. Bankruptcy Judge**

# TABLE OF CONTENTS

**INTRODUCTION** .... 4
**FACTUAL AND PROCEDURAL BACKGROUND** .... 7
- **I. ROSENBERG, THE DEBTORS AND THESE CHAPTER 11 CASES** .... 7
- **II. HART'S ADMINISTRATIVE EXPENSE MOTION AND ADVERSARY PROCEEDING COMPLAINT** .... 9

**LEGAL STANDARDS GOVERNING MOTIONS TO DISMISS AND ADMINISTRATIVE EXPENSE MOTION** .... 13
**DISCUSSION** .... 14
- **I. THRESHOLD DEFENSES ASSERTED BY THE TRUSTEE** .... 14
  - A. THE *BARTON* DOCTRINE .... 14
  - B. QUALIFIED IMMUNITY AND BUSINESS JUDGMENT .... 17
- **II. PLAINTIFFS' CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF CONCERNING DAGNY ENTERPRISES (FIRST CLAIM)** .... 19
- **III. PLAINTIFFS' CLAIMS AGAINST THE TRUSTEE FOR DEFICIENT ENFORCEMENT OF ROSENBERG'S SETTLEMENT OBLIGATIONS (SECOND & THIRD CLAIMS)** .... 23
- **IV. HART'S CLAIM TO RECOVER THE JANUARY 2020 TRANSFER (TWELFTH CLAIM & ADMINISTRATIVE EXPENSE MOTION)** .... 25
  - A. CONVERSION .... 28
  - B. UNJUST ENRICHMENT .... 38
  - C. CONSTRUCTIVE TRUST .... 40
  - D. HART HAS STANDING TO ASSERT HER CONVERSION CLAIM .... 40
  - E. HART'S CONVERSION CLAIM IS ENTITLED TO ADMINISTRATIVE EXPENSE PRIORITY .... 42
- **V. PLAINTIFFS' SLANDER OF TITLE CLAIM (THIRTEENTH CLAIM)** .... 43
- **VI. PLAINTIFFS' CLAIM FOR LEAVE TO PURSUE THE TRUSTEE'S BOND (NINETEENTH CLAIM)** 46
- **VII. PLAINTIFFS' CLAIMS AGAINST FLAGSTAR (SIXTEENTH, SEVENTEENTH & EIGHTEENTH CLAIMS)** .... 47
- **VIII. THE TRUSTEE'S REQUEST FOR SANCTIONS** .... 50

**CONCLUSION** .... 51

## INTRODUCTION

The motions before the Court continue a long-running saga, which began 11 years ago with the chapter 11 filings of Alrose Allegria, LLC and Alrose King David, LLC (together, the "Debtors"), two affiliated debtors that owned and operated the Allegria Hotel in Long Beach, New York. The Debtors, in turn, were owned and controlled by Allen Rosenberg, a real estate investor who owned a portfolio of more than 40 properties in the New York City area through a network of limited liability companies and other entities.

Questions about Rosenberg's management of the Debtors arose shortly after these cases was filed, and in 2017, the Court ordered the appointment of a chapter 11 trustee. The trustee sued Rosenberg and 42 of his affiliates, alleging that he had fraudulently diverted more than $16 million from the Debtors in the years preceding their bankruptcy filings. In 2019, the trustee and Rosenberg agreed to a settlement, which as updated and amended the following year, provided for Rosenberg to pay the estate approximately $9.2 million, plus fees and costs, and authorized the trustee to sell his properties to the extent needed to fund the settlement. The Court then confirmed a liquidating plan, pursuant to which a creditor trust (the "Creditor Trust" or "Trust") was tasked with effectuating the settlement and otherwise winding up the case. Kenneth Silverman, the chapter 11 trustee, was appointed trustee (the "Trustee") of the Creditor Trust.

Four and a half years have now passed since the creation of the Creditor Trust, and the Trustee has collected the great majority of the sums Rosenberg agreed to pay. Almost all claims against the Debtors have been resolved, the sole exception being the claims asserted in the adversary proceeding and administrative expense motion now before the Court. Those two proceedings were filed last year by Penny Hart, a former friend and business associate of Rosenberg, who invested in a number of his real estate deals and now claims to have been cheated

by him. She is joined as plaintiff by Dagny Enterprises, LLC ("Dagny Enterprises"; together with Hart, "plaintiffs"), a company she formed to hold certain real estate properties. Their 100-plus page complaint asserts six claims against the Creditor Trust and the Trustee, and 13 claims against other defendants—Rosenberg, three of his companies, and several other parties alleged to have facilitated his wrongdoing to her detriment.

Plaintiffs' principal claim against the Creditor Trust and the Trustee seeks to recover a $1.65 million payment that Rosenberg made to the Debtors in January 2020 through an intermediary, in partial satisfaction of his settlement obligation. Hart claims that the transferred monies belonged to her, not Rosenberg, and that the Creditor Trust is therefore required to return these funds to her under the law of unjust enrichment, or alternatively conversion or constructive trust. She asserts this claim both in the complaint (as the twelfth claim) and in her separate motion seeking allowance of the claim as an administrative expense. The Trustee opposes her motion and has moved to dismiss all of the complaint's claims against him and the Trust.

For the reasons discussed below, the Court concludes that Hart has properly pleaded a conversion claim against the Trust for a portion of the January 2020 transfer—namely, the $538,725 that Hart was entitled to receive by virtue of her minority equity stake in Alrose Dagny, LLC ("Alrose Dagny"), the Rosenberg company that was the source of the transferred monies. Contrary to the Trustee's contentions, this claim is not barred by the *Barton* doctrine, qualified immunity, the business judgment rule or the statute of limitations; Hart has standing to assert the claim; the portion of the claim just described is legally sufficient; and to the extent the claim is ultimately allowed, it will be entitled to administrative expense priority. The Court will therefore deny the Trustee's motion to dismiss this portion of the claim, and will schedule further consolidated proceedings on this claim and Hart's administrative expense motion. The complaint

does not state a claim for the balance of the January 2020 transfer, and the Court will therefore dismiss the balance of this claim and will deny that portion of Hart's administrative expense motion.

The complaint also asserts two claims against the Creditor Trust and the Trustee relating to Dagny Enterprises, seeking a judgment declaring that Rosenberg has no ownership interest in Dagny Enterprises (first claim) and damages for slander of title (thirteenth claim). These claims are legally sufficient, and the Court will sustain them. Plaintiffs' claim for leave to pursue the chapter 11 trustee's bond (nineteenth claim) is legally insufficient, and the Court will dismiss it.

This leaves plaintiffs' two other claims against the Creditor Trust and the Trustee, which seek (i) specific performance of certain asset sales authorized by the Rosenberg settlement (second claim), and (ii) damages for the Trustee's alleged breaches of fiduciary duty, gross negligence and willful misconduct in failing to take proper steps to collect the full settlement sum owed by Rosenberg (third claim). The Court finds that these claims are premature. The Trust has already recovered the great bulk of the amounts owed by Rosenberg, and it appears likely to recover the full remaining balance, which would moot these two claims. The Court will therefore stay those claims, without prejudice to plaintiffs' right to move to vacate the stay if circumstances warrant.

The Court will also grant the motion to dismiss filed by Flagstar Bank, N.A. and two of its affiliates (collectively, "Flagstar"). The complaint asserts multiple claims against Flagstar for failing to remove Rosenberg as an authorized signatory of two companies after Hart removed him as manager—a failure that allegedly led to a cascade of harms. Whatever the merits of these claims, they neither arise under the Bankruptcy Code nor arise in or relate to these bankruptcy cases. Consequently, the Court lacks original jurisdiction over these claims. The Court also lacks supplemental jurisdiction over these claims, since they do not arise from the same nucleus of

operative facts as the claims over which the Court does have original jurisdiction—namely, plaintiffs' claims against the Creditor Trust and the Trustee. Lacking jurisdiction over the claims against Flagstar, the Court will dismiss those claims.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

### I. Rosenberg, the Debtors and These Chapter 11 Cases

Rosenberg is a real estate investor who, at the time the Debtors commenced their chapter 11 cases, owned and controlled a network of at least 54 affiliated entities, each formed to own and manage particular real estate assets. (Many of these entities were named "Alrose," which incorporates the initial letters of Rosenberg's first and last names.) Through these entities, he owned more than 40 properties in New York City and on Long Island. Both the Trustee and plaintiffs have alleged that Rosenberg repeatedly misappropriated investor funds and used his network of companies to facilitate and conceal his diversion of assets.

Two of Rosenberg's companies were the Debtors, Alrose Allegria, LLC ("Alrose Allegria") and Alrose King David, LLC ("Alrose King David"), which owned and operated the Allegria Hotel in Long Beach, New York. In July 2015, Alrose Allegria filed for relief under chapter 11 of the Bankruptcy Code. The Internal Revenue Service moved to convert the case to a chapter 7. In February 2016, the Court declined to convert the case and instead ordered the appointment of a chapter 11 trustee. Alrose King David subsequently filed a chapter 11 petition in March 2016. The following month, the Court approved the joint administration of the two cases, as well as the appointment of Kenneth Silverman, who had previously been appointed chapter 11 trustee of Alrose Allegria, to serve in that capacity in the Alrose King David case as well. Silverman served

---

[1] These background facts, which are undisputed, were taken from the parties' motion papers and other filings in this case.

as chapter 11 trustee of both Debtors from that time until the Debtors' plan of liquidation went effective in February 2022, at which time he was discharged from that role and became the Trustee of the newly formed Creditor Trust.[2]

A central focus of the chapter 11 trustee's efforts in these two cases was the prosecution of claims against Rosenberg and his affiliates and associates. In 2017, the trustee filed adversary proceedings in this Court against Rosenberg; his wife, Mia Rosenberg; his girlfriend, Faye Klausner; and 42 business entities that Rosenberg claimed to own or control. The complaints alleged that Rosenberg, assisted by the other defendants, fraudulently diverted more than $16 million from the Debtors in the years preceding their bankruptcy filings.

In addition, to prevent asset transfers that might impede his ability to collect an eventual judgment from Rosenberg, the trustee sought and obtained a series of injunction orders—19 preliminary injunction orders, the last of which matured into a permanent injunction upon confirmation of the plan—restraining Rosenberg and a number of entities believed to be owned or controlled by him (collectively, the "Rosenberg Defendants") from transferring or encumbering any of their assets without the trustee's consent. *See* Nineteenth Consent Preliminary Injunction Order, *Silverman v. Rosenberg (In re Alrose Allegria, LLC)*, Adv. Proc. No. 17-01084 (Bankr. S.D.N.Y. 2020), ECF No. 61. Rosenberg consented to the entry of each of these orders.

In 2019, the chapter 11 trustee reached an initial settlement with the Rosenberg Defendants. The parties subsequently entered into an updated and amended settlement agreement in October 2020, which the Court approved in February 2021. As amended, the settlement required Rosenberg to pay the trustee $9.2 million, plus attorneys' fees and costs, and it authorized the trustee to sell

[2] Judge (now Chief Judge) Sean Lane presided over both Debtors' bankruptcies until September 2022, when he transferred the two cases to this Court.

or refinance properties owned by the Rosenberg Defendants to the extent needed to fund the settlement payment. Rosenberg also agreed to entry of the permanent injunction, which bars him and the other Rosenberg Defendants from transferring or encumbering any of their assets until the settlement sum is paid in full.

The chapter 11 trustee filed a plan of liquidation, which was confirmed in November 2021 and went effective in February 2022. In addition to providing for a plan injunction substantially similar to the agreed permanent injunction, the plan created the Creditor Trust, with Silverman as its Trustee. The Trust is charged with resolving creditor claims, liquidating the Debtors' assets—principally, their claims against Rosenberg under the 2020 settlement—and distributing the net proceeds to creditors. The plan provides for the Court's retention of jurisdiction over, among other things, all proceedings concerning claims allowance, claims brought by the Trust, and the interpretation or enforcement of orders entered by the Court.[3]

The post-confirmation winding-up process has by now been mostly, but not entirely, completed. At a May 2026 hearing in this case, the Trustee's counsel represented that the entire $9.2 million principal amount of the settlement sum had been paid, and that the only amounts still unpaid were interest, attorneys' fees and costs, which he estimated totaled at least several hundred thousand dollars.

## II. Hart's Administrative Expense Motion and Adversary Proceeding Complaint

According to her filings in this case, Penny Hart first met Rosenberg more than 20 years ago, and the two became friends. Over time, they also developed a business relationship, and Hart

---

[3] In September 2022, the Debtors' bankruptcy cases were closed. In January 2024, on the Trustee's motion, the two bankruptcies were reopened to permit the Trustee to commence an adversary proceeding against Rosenberg for breach of the permanent injunction and the plan injunction. Given the existence and role of the Creditor Trust, there was no need to reappoint a chapter 11 trustee, and no such reappointment was ordered.

invested in a number of Rosenberg's real estate ventures. Between 2015 and 2020, she provided more than $10 million in loans and equity investments to Rosenberg's companies. The investments most relevant to this decision involve four entities: Alrose Dagny, the subject of claim twelve; Dagny Enterprises, the subject of claims one and thirteen; and Alrose Patchogue, LLC ("Alrose Patchogue") and Alrose 32, LLC ("Alrose 32"), the subject of the three claims against Flagstar (claims sixteen, seventeen and eighteen).

Over time, Hart's relationship with Rosenberg soured, and she proceeded to bring three successive suits against him in New York State Supreme Court, New York County:

- In August 2022, Hart, together with Alrose Dagny and Dagny Enterprises, commenced suit against Rosenberg and a number of his companies, alleging that Rosenberg had fraudulently diverted money from several projects in which he had induced Hart to invest, including Alrose Dagny. The suit seeks Alrose Dagny's dissolution, an accounting and a damages award. In addition, Hart seeks to establish her entitlement to approximately $4.4 million (the proceeds of the 2022 sale of Alrose Dagny's remaining property), which is being held in escrow pursuant to court order.[4]
- In 2023, Hart again sued Rosenberg and a number of other defendants in the same court, this time for his alleged diversion of Alrose Dagny's November 2019 refinancing proceeds. (The suit does not address Schreiber's subsequent transfer of a portion of those funds to the Debtors.) Unlike her 2022 suit, which she brought in her individual capacity, Hart brought this suit derivatively on behalf of Alrose Dagny.
- In 2024, Hart commenced a third suit against Rosenberg in the same court, this time naming Flagstar as an additional defendant. This suit asserts the same claims against Flagstar that Hart asserts in this adversary proceeding—namely, that Flagstar wrongfully refused to honor corporate resolutions directing it to remove Rosenberg as an authorized signatory of Alrose Patchogue and Alrose 32.

Neither the Trust nor the Trustee is a party in any of these suits. To the Court's knowledge, all three of these suits are still pending.

---

[4] In 2025, the Trustee brought suit in the same state court against Rosenberg, Hart and a number of affiliated defendants for a judgment declaring that this $4.4 million in escrowed funds belongs to the Trust. The Trustee's suit is being held in abeyance pending the outcome of Hart's 2022 lawsuit.

In July 2025, Hart moved in this Court for allowance of her $1.65 million administrative expense claim.[5] In August 2025, Hart and Dagny Enterprises filed the complaint now before the Court, commencing this adversary proceeding. The complaint asserts six claims against the Creditor Trust and the Trustee, each of which is discussed at length below. In short:

- The first claim seeks a declaratory judgment that Dagny Enterprises is neither owned nor controlled by Rosenberg and therefore should not be included among the "Rosenberg Defendants" that are enjoined from transferring or encumbering their assets until Rosenberg has fully paid his settlement obligations.
- The second claim seeks specific performance of certain asset sales authorized by the Rosenberg settlement.
- The third claim seeks damages for the Trustee's alleged breaches of fiduciary duty, gross negligence and willful misconduct in failing to take proper steps to collect the full settlement sum owed by Rosenberg.
- The twelfth claim, like Hart's administrative expense motion, seeks to recover the $1.65 million wired to the Debtors in January 2020 on Rosenberg's behalf, based on allegations that these monies belonged to Hart.
- The thirteenth claim seeks damages for slander of title, on the ground that the Trustee wrongfully filed a UCC-1 financing statement against a property owned by Dagny Enterprises, despite the fact that Rosenberg had no ownership interest that company.
- The nineteenth claim seeks authorization to commence suit against Hartford Fire Insurance Company on the bond that was issued in connection with the chapter 11 trustee's appointment.

The complaint asserts the third claim against the Trustee alone; the twelfth claim against the Trust, and against the Trustee to the extent he or his professionals were paid with these monies; and the thirteenth claim against the Trustee and Rosenberg. For each of the claims against the Trustee, the complaint names the Trustee as a defendant in both his official and his individual capacities.

The complaint also asserts 11 claims against Rosenberg, three of his companies (Alrose Steinway, Alrose Group Management, Inc. and Horsey, Hippo & Ball, LLC), and Michael Schreiber, the friend who allegedly helped him divert funds from Alrose Dagny in 2019 and 2020.

---

[5] In the alternative, her motion requested leave to file a late proof of claim asserting the same claim as a general unsecured claim. That request is moot, given the Court's ruling that any claim Hart may have relating to the January 2020 transfer is entitled to administrative expense status.

To a significant extent, these claims duplicate claims asserted by Hart in her various New York state court suits against these parties. In addition, these claims rest on allegations largely unrelated to those on which the claims against the Trust and the Trustee rest.

Finally, the complaint asserts three claims against Flagstar arising from transactions involving two other Rosenberg-affiliated entities, Alrose Patchogue, LLC ("Alrose Patchogue") and Alrose 32, LLC ("Alrose 32"). Plaintiffs allege that, in August 2023, Hart removed Rosenberg as manager of both entities and caused these companies to enact resolutions directing Flagstar, the companies' bank, to remove him as an authorized signatory on their accounts. Flagstar refused to honor those resolutions, thereby enabling Rosenberg to make more than $300,000 in unauthorized withdrawals, which resulted in a cascading series of harms.

The Trustee and Flagstar filed motions to dismiss the adversary proceeding complaint in September and October 2025, respectively. Rosenberg and his companies did not respond to the complaint, and the Clerk entered their default in November 2025. (To date, plaintiffs have not moved for a default judgment.) In February 2026, Schreiber filed his own motion to dismiss.

The Court heard oral argument on Hart's administrative expense motion in September 2025 and then advised the parties that it would defer ruling on that motion until after hearing argument on the motions to dismiss. In November 2025, the Court heard argument on the motions to dismiss filed by the Trustee and by Flagstar, and in May 2026, the Court heard argument on Schreiber's motion to dismiss. The day after the May hearing, the Court issued a bench ruling granting Schreiber's motion to dismiss the claims against him on abstention grounds, finding abstention to be warranted in light of the parallel claims that Hart is prosecuting against Schreiber in her state court suit. The Court reserved decision on the remaining motions, on which the Court now rules.

At the May 2026 hearing, the Court invited plaintiffs and the Trust to file supplemental letter briefs addressing whether it would be appropriate for the Court to rule on Hart's administrative expense motion and the various motions to dismiss in a single combined decision that addresses all arguments made by each side in connection with any of these motions. In their supplemental briefs, the Trustee expressed support for this approach, but plaintiffs objected on several grounds. Having considered plaintiffs' objections, the Court concludes that it is appropriate to issue this one combined ruling, which considers all of the parties' arguments. Each side has had a full opportunity to respond to all of the other side's arguments, and thus neither side will be prejudiced by the Court's adoption of this approach.

## LEGAL STANDARDS GOVERNING MOTIONS TO DISMISS AND ADMINISTRATIVE EXPENSE MOTION

The Trustee's motion seeks to dismiss plaintiffs' complaint under Rule 12(b)(6), which is applicable to bankruptcy adversary proceedings pursuant to Bankruptcy Rule 7012(b). A complaint is subject to dismissal under Rule 12(b)(6) if it fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b). To overcome a Rule 12(b)(6) motion, the plaintiff must demonstrate that the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Consequently, when considering a motion to dismiss, a court must "accept[] all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (internal quotation marks and citations omitted), *cert. denied*, 554 U.S. 930 (2008). However, "a legal conclusion couched as a factual allegation" does not demand the same favorable treatment. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Hart's administrative expense motion seeks allowance of her claim under section 503(b) of the Bankruptcy Code. As the claimant, Hart bears the burden of demonstrating her right to administrative priority by a preponderance of the evidence. *See Supplee v. Bethlehem Steel Corp. (In re Bethlehem Steel Corp.)*, 479 F.3d 167, 172 (2d Cir. 2007); *see also In re Ditech Holding Corp.*, 2023 WL 7381500, at *14 (Bankr. S.D.N.Y. 2023) ("The burden of proving entitlement to an administrative expense is on the claimant and the measure of proof is a preponderance of the evidence." (citation omitted)), *aff'd*, 2024 WL 4707911 (S.D.N.Y. 2024).

For purposes of this decision, the Court will address the legal sufficiency of Hart's administrative expense claim, assuming as true the factual allegations and other assertions she has made in both the complaint and her motion, and considering all the legal arguments advanced by the parties in connection with either her motion or the Trustee's motion to dismiss. Further proceedings on her administrative expense claim and the complaint, including an evidentiary hearing if and when needed, will be scheduled on a consolidated basis.

## DISCUSSION

### I. Threshold Defenses Asserted by the Trustee

The Trustee contends that the *Barton* doctrine bars all of plaintiffs' claims against him and the Trust, and that the qualified immunity and business judgment defenses bar all claims that seek to impose personal liability on him. The Court considers these threshold defenses in turn.

#### A. The *Barton* Doctrine

The Trustee contends that all claims against him and the Trust are barred by the *Barton* doctrine, which requires parties to obtain leave from the appointing court before initiating a lawsuit against a court-appointed officer for actions taken in his official capacity. *See Barton v. Barbour*, 104 U.S. 126, 136–37 (1881) (suit against receiver); *Vass v. Conron Bros. Co.*, 59 F.2d 969, 970 (2d Cir. 1932) (extending *Barton* to suits against bankruptcy trustees). The Court does not agree.

The Court concludes, instead, that the *Barton* doctrine has no application to a suit, like this one, that was filed in the bankruptcy court that appointed the trustee.

The case law on this issue is relatively sparse, and no court in this District has ruled on the issue, because bankruptcy trustees have seldom invoked *Barton* as a defense to claims brought against them in bankruptcy court. Nevertheless, the proper resolution of this issue is clear when one considers the *Barton* rule's rationale, which the Second Circuit has described as follows:

> A trustee in bankruptcy is an officer of the court that appoints him. . . . We have held that there is no question that a trustee in bankruptcy may be held personally liable for breach of his fiduciary duties. . . . At the same time, the court that appointed the trustee has a strong interest in protecting him from unjustified personal liability for acts taken within the scope of his official duties. A well-recognized line of cases starting with *Barton v. Barbour*, 104 U.S. 126, 26 L.Ed. 672 (1881), extends such protection by requiring leave of the appointing court before a suit may go forward in another court against the trustee.

*Lebovits v. Scheffel* (*In re Lehal Realty Assocs.*), 101 F.3d 272, 276 (2d Cir. 1996) (internal citations and quotation marks omitted); *see also id.* at 277 ("'We have an institutional interest in holding our trustees fully responsible for breaches of their fiduciary duty, including the duty to exercise due care. . . . We have an equally vital institutional interest in protecting our trustee from being mulcted into another court on frivolous or trumped up charges.' . . . The[se] institutional concerns . . . are weighty." (quoting the District Court decision below)).

When a trustee is sued in the court that appointed him, these concerns are not implicated. To the contrary, "[w]hen a party sues the trustee in the same bankruptcy court that appointed her trustee, it reinforces rather than undermines *Barton*'s goals." *In re World Mktg. Chi., LLC*, 584 B.R. 737, 745 (Bankr. N.D. Ill. 2018). For this reason, "[t]he majority rule is that a plaintiff need

not seek approval before suing a bankruptcy trustee in his appointing bankruptcy court." *In re Horton*, 612 B.R. 400, 405 (Bankr. D.N.M. 2020) (collecting authorities).[6]

The First Circuit squarely addressed this issue in *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1 (1st Cir. 1999), *cert. denied*, 530 U.S. 1230 (2000). There, a "disgruntled creditor" sued a bankruptcy trustee in the court that had appointed him, alleging negligence and breach of fiduciary duty. The First Circuit affirmed the bankruptcy court's dismissal of the suit, but rejected the trustee's argument that the suit was barred by the *Barton* doctrine:

> [Following *Barton*,] a long line of cases has required leave from the bankruptcy court before allowing an action against the trustee to proceed *in another tribunal*. . . . Neither these precedents nor the rationale that undergirds them have any application to proceedings in the court that is overseeing administration of the bankruptcy estate.

*Id.* at 4-5 (emphasis in original) (citations omitted).

For similar reasons, the Fifth Circuit in *Carroll v. Abide,* 788 F.3d 502 (5th Cir. 2015), held that *Barton* approval was not a prerequisite for suit against a bankruptcy trustee in the district court that had withdrawn the reference from the appointing court. The court of appeals held that, because the trustee "served as an officer of *both* the bankruptcy court and the district court," the justification for *Barton*, including the institutional concerns identified by the Second Circuit, did not apply:

---

[6] The cases cited by the Trustee are not to the contrary. In *In re Liberty Bridge Cap. Mgmt. GP, LLC*, 2025 WL 1091259 (Bankr. S.D.N.Y. 2025), a *pro se* plaintiff moved in bankruptcy court for leave to sue the trustee in that court for alleged breaches of his fiduciary duties. In ruling on that motion, the court considered the merits of plaintiff's claims, found them to be deficient, and denied the motion on that ground. *Id.* at *5. Because the plaintiff had chosen to seek leave to sue, the court had no occasion to, and did not, consider whether *Barton* approval would have been required had plaintiff not requested it.

*Wilson v. Nandlal Corp. (In re Cumberbatch)*, 657 B.R. 683 (Bankr. E.D.N.Y. 2024), is also inapposite. Plaintiffs there brought a state court suit against a real estate broker retained by a bankruptcy trustee, and defendants removed the suit to bankruptcy court. The bankruptcy court dismissed the suit on the ground that plaintiffs had violated *Barton* by suing in state court without first obtaining bankruptcy court approval. *Id.* at 696–97.

"The district court shared the [bankruptcy court's] strong interest in protecting [the trustee] from personal liability for acts taken within the scope of [his] official duties." *Id.* at 506 (emphasis in original).

The Court agrees with the reasoning of these cases. Because plaintiffs brought this suit in the bankruptcy court that appointed the Trustee—this Court—the *Barton* doctrine does not apply.

**B. Qualified Immunity and Business Judgment**

The Second Circuit has long held that "a trustee in bankruptcy may be held personally liable for breach of his fiduciary duties," and indeed, that "[s]uch liability may attach as the result of negligent, as well as knowing or intentional, breaches." *In re Gorski*, 766 F.2d 723, 727 (2d Cir. 1985). At the same time, without repudiating *Gorski*, the Second Circuit has also adopted a second, more protective standard: "A bankruptcy trustee is immune from suit for personal liability for acts taken as a matter of business judgment in acting in accordance with statutory or other duty or pursuant to court order." *Smith v. Silverman (In re Smith)*, 645 F.3d 186, 190 (2d Cir. 2011). The case law in this circuit provides little clarity as to how to reconcile the latter standard—often referred to as the qualified immunity or business judgment standard—with the former. In particular, in what circumstances does the latter standard insulate a trustee from a claim that he was negligent in carrying out his duties?[7] Fortunately, the Court need not resolve this issue in order to rule on the Trustee's motion to dismiss.

[7] A recent Ninth Circuit Court of Appeals decision addresses these issues comprehensively. *See Phillips v. Goldman* (*In re Gilman*), 176 F.4th 1152 (9th Cir. 2026). As that decision explains, the Ninth Circuit—unlike this Circuit—has a well developed body of case law on this topic, which recognizes two distinct types of immunity for bankruptcy trustees: "derived judicial immunity," which protects actions taken by trustees with court approval, and "quasi-judicial immunity," which protects certain exercises of discretionary judgment. *Id.* at 1163-67. For actions protected by neither type of immunity, trustees can be held personally liable for actions that are merely negligent. *See id.* at 1165, 1167 ("[The Supreme Court has suggested that negligent conduct is enough to impose liability on a trustee." (citing *Mosser v. Darrow*, 341 U.S. 267, 272 (1951))). However, "[e]ven when a trustee does not have immunity for a particular action or inaction, she can invoke the 'business judgment rule' as a defense to liability." *Gilman*, 176 F.4th at 1167.

While the Trustee contends that the qualified immunity and business judgment doctrines immunize him from personal liability on all of plaintiffs' claims, this defense applies, at most, to the three claims that seek to impose personal liability on him: (i) the third claim, which seeks damages for the Trustee's alleged breaches of fiduciary duty, gross negligence and willful misconduct in failing to take proper steps to collect the full settlement sum owed by Rosenberg; (ii) the twelfth claim, which seeks to recover from both the Trust and the Trustee the $1.65 million wired to the Debtors in January 2020; and (iii) the thirteenth claim, which seeks damages for slander of title on the ground that the Trustee wrongfully filed a UCC-1 financing statement against a property owned by Dagny Enterprises.[8]

The Court concludes that the qualified immunity and business judgment doctrines do not protect the Trustee from personal liability for either the twelfth or the thirteenth claim. The twelfth claim does not contend that the Trustee breached his fiduciary duties, nor does it challenge his exercise of business judgment. Instead, the crux of this claim is that the Trust and the Trustee converted to their own use and benefit property that belonged to Hart. The Trustee has cited no authority for the proposition that the qualified immunity and business judgment defenses shield a

---

"If a trustee has 'sound reasons' for a business decision, '[l]iability will not be imposed for the exercise of such judgment, absent negligence.'" *Id.* at 1168 (citations omitted).

To the Court's knowledge, neither the Second Circuit nor any court within this Circuit has conducted a similar analysis of the contours of trustee immunity. Such an analysis would have significant value, given the relatively undeveloped state of the law on this subject in this Circuit.

[8] The three claims just noted (the third, twelfth and thirteenth) appear to be the only claims that the complaint asserts against the Trustee. Although the complaint is not completely clear on this, the three other claims asserted against the Trust—the first claim (declaratory judgment concerning Dagny Enterprises), the second claim (specific performance of certain asset sales) and the nineteenth claim (authorization to sue Hartford on the Trustee's bond)—do not appear to be asserted against the Trustee. Moreover, the three latter claims seek only declaratory relief or specific performance, not an award of damages. The qualified immunity defense therefore has no application to those claims. "[B]ecause there is no risk [the trustee] would be held personally liable, quasi-judicial immunity is not a consideration and therefore not an impediment to . . . bringing the[se] . . . claim[s]." *In re Horton*, 612 B.R. 400, 406 (Bankr. D.N.M. 2020).

trustee from personal liability for conversion, nor does the Court see any reason to extend these defenses to claims of that sort. To the contrary, if the Trustee is wrongfully in possession of Hart's property, he should be required to return it.

The qualified immunity and business judgment defenses are inapplicable to the complaint's thirteenth claim for a different reason. As discussed in section V below, this claim rests on plausible allegations that the Trustee acted with reckless disregard for Hart's rights by refusing to terminate his UCC-1 filing against a property owned by a company in which Rosenberg had no interest. The complaint alleges that Hart twice sent the Trustee a letter explaining the facts and citing a state court ruling to this effect, and the Trustee's motion papers make no plausible attempt to explain or defend his disregard of that ruling. Reckless conduct of this sort is not protected by the qualified immunity and business judgment defenses.

This leaves the Trustee's assertion of these defenses with respect to the complaint's third claim. As discussed in section III below, the Court believes it would be premature to consider the merits of the third claim (or the second claim) at the present time. The Court will therefore stay those claims and will defer consideration of whether the qualified immunity and business judgment doctrines shield the Trustee from personal liability for the third claim.

For these reasons, the Court will deny the Trustee's motion to dismiss to the extent it seeks dismissal of the twelfth and thirteenth claims on qualified immunity and business judgment grounds, and will defer consideration of the application of these defenses to the third claim.

## II. Plaintiffs' Claim For Declaratory and Injunctive Relief Concerning Dagny Enterprises (First Claim)

As noted, the chapter 11 trustee sought and obtained a series of preliminary injunction orders, followed in February 2021 by entry of a permanent injunction—all with Rosenberg's consent—restraining each of the Rosenberg Defendants from transferring or encumbering any of

their assets without the trustee's consent. The Debtors' liquidating plan contains a substantially similar injunction. Both the permanent injunction and the plan injunction include Dagny Enterprises as one of the "Rosenberg Defendants" covered by the injunction's terms.

The first claim of the complaint asserts that Dagny Enterprises should never have been included in these injunctions, because Rosenberg has had no interest in or control over Dagny Enterprises at any time since January 1, 2017. Specifically, the complaint alleges that Hart formed Dagny Enterprises in 2012 to hold certain of her real estate properties and initially was the company's sole owner; that Rosenberg acquired certain Class A membership interests in Dagny Enterprises in 2015, in exchange for a $1 million equity contribution; but that, by letter effective as of January 1, 2017 (attached to the complaint as Exhibit B), Rosenberg transferred all of his membership interests in the company to Hart and confirmed that he had never held any position at the company.[9] Plaintiffs request a judgment declaring that Rosenberg has no interest in or control over Dagny Enterprises, and an order modifying the permanent injunction and the plan injunction to remove all references to Dagny Enterprises.

The Trustee does not dispute that the issues raised by this claim make it an appropriate subject for relief under the Declaratory Judgment Act. *See* 28 U.S.C. § 2201(a); *see also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) ("[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co*., 312 U.S. 270, 273 (1941))). As in *MedImmune*, the injunction here "put[s] the [plaintiffs] to the choice

[9] It is undisputed that Rosenberg continued to represent to the Trustee that he owned or controlled Dagny Enterprises, which caused the Trustee to include that company as one of the Rosenberg Defendants covered by the permanent injunction order and the plan injunction.

between abandoning [their] rights or risking prosecution," "a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate." 549 U.S. at 129 (internal quotation marks and citation omitted).

Moreover, the January 1, 2017 letter on which this claim rests supports plaintiffs' contention that Rosenberg gave up all of his ownership interests in, and any control over, Dagny Enterprises at that time. That letter provides unequivocally for Rosenberg's return to Hart of all of his membership interests in Dagny Enterprises, in full satisfaction of a $1 million loan that Hart had made to him. Complaint, Exh. B, at ¶ 1 ("I hereby return all of the [membership interests] to you, free and clear of all liens and other encumbrances, and withdraw as a Member" of Dagny Enterprises); *see also id.* ¶ 3 ("I am not [sic], and have never held, any position with the Company, including as an officer, manager and employee of Company."). By the plain language of the letter, Hart became the sole member of Dagny Enterprises as of January 1, 2017.

The Trustee has offered no reason to discredit this letter. Nor does the Trustee dispute that the court in Hart's 2022 New York State Supreme Court suit found that this letter was enforceable and that it extinguished Rosenberg's ownership interest in Dagny Enterprises.[10] Instead, the Trustee's motion seeks dismissal on two grounds. First, the Trustee argues that plaintiffs allowed Rosenberg to continue acting as Dagny Enterprises' owner and managing member until 2022, when Hart commenced her state court suit against him, thereby giving him "apparent authority."

[10] Rosenberg had asserted a counterclaim in that suit, seeking a declaration that he owned Dagny Enterprises. After an evidentiary hearing, the state court dismissed Rosenberg's counterclaim, finding it to be barred by the January 1, 2017 letter. *See* Decision & Order on Motion, *Hart et al. v. Rosenberg et al.*, Index No. 652740/2022 (N.Y. Sup. Ct. July 24, 2023), NYSCEF No. 90; *see also* Transcript of July 21, 2023 Proceedings, *Hart et al. v. Rosenberg et al.*, Index No. 652740/2022 (N.Y. Sup. Ct. Oct. 16, 2023), NYSCEF No. 140 at 5-6. However, the Trustee was not a party to that action, and plaintiffs do not contend that he is bound by the state court's ruling.

Second, the Trustee contends that this claim is an improper collateral attack on final and non-appealable injunctions entered by this Court.

Neither of these arguments has merit. First, as to Rosenberg's alleged apparent authority, "[e]ssential to the creation of apparent authority are *words or conduct of the principal*, communicated to a third party, that give rise to the appearance and belief that the agent possesses authority to enter into a transaction." *Standard Funding Corp. v. Lewitt*, 89 N.Y.2d 546, 551 (N.Y. 1997) (emphasis in original) (internal quotation marks and citation omitted). The Trustee has not identified any words or conduct that cloaked Rosenberg with apparent authority to act as the owner of Dagny Enterprises. The Trustee argues that plaintiffs' allegations show that Rosenberg exercised control "by direct[ing] the refinance of a Dagny mortgage and direct[ing his lawyer] to hold almost $2.8 million of Dagny Mortgage Proceeds in escrow." Trustee Br. at 30. However, as discussed in section IV below, those allegations concern a different entity, Alrose Dagny. The allegations provide no basis to find that Rosenberg possessed apparent authority to act for Dagny Enterprises.[11]

The Trustee's contention that this claim constitutes an improper collateral attack on this Court's prior orders is equally lacking in merit. Rule 60 expressly preserves a court's authority to set aside its prior orders. *See* Fed. R. Civ. P. 60(b), made applicable to these proceedings by Fed.

[11] Even if that were not the case, the Trustee's argument would be defeated by the adverse agent doctrine, which provides that a principal is relieved of liability for an agent's acts "when the agent has totally abandoned the principal's interests." *Mediators, Inc. v. Manney (In re Mediators, Inc.)*, 105 F.3d 822, 827 (2d Cir. 1997) (internal quotation marks and citation omitted); *see also Wight v. BankAmerica Corp*., 219 F.3d 79, 87 (2d Cir. 2000) ("[W]here an agent . . . is really committing a fraud for his own benefit, he is acting outside of the scope of his agency, and it would therefore be most unjust to charge the principal with knowledge of it." (internal quotation marks and citation omitted)). When Rosenberg consented to the inclusion of Dagny Enterprises in the various injunction orders, he not only acted without actual or apparent authority; he also acted in a manner clearly contrary to Dagny Enterprises' interests. The Trustee has not suggested any possible way in which Dagny Enterprises might have benefited from being included in those injunctions, nor can the Court conceive of any. Under black letter agency law principles, Rosenberg's adverse actions cannot bind Dagny Enterprises.

R. Bankr. P. 9024. Rule 60(b) enumerates a number of grounds for relief, including "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). A motion brought under Rule 60(b)(6) should be granted if "appropriate to accomplish justice." *Klapprott v. United States*, 335 U.S. 601, 614–15 (1949). Not only are "[m]otions under Rule 60(b) . . . addressed to the sound discretion of the . . . court," *Mendell In Behalf of Viacom, Inc. v. Gollust*, 909 F.2d 724, 731 (2d Cir. 1990), *cert. granted*, 498 U.S. 1023 (1991), *aff'd*, 501 U.S. 115 (1991), but that discretion is "especially broad" under subsection (6), *In re Emergency Beacon Corp*., 666 F.2d 754, 760 (2d Cir. 1981).

Here, accepting the complaint's allegations as true, it is clear that modifying the permanent injunction and the plan injunction to exclude Dagny Enterprises from the injunction's reach is "appropriate to accomplish justice," *Klapprott*, 335 U.S. at 614–15. Rosenberg has had no ownership or control interest in Dagny Enterprises at any time since January 1, 2017. As a result, there was no basis for the injunction orders to extend to that company, nor has the Trustee presented any reason why the Court should not correct that error now.

For these reasons, the first claim of the complaint properly pleads a claim for a declaratory judgment and an order modifying the injunctions to remove Dagny Enterprises. The Court will therefore deny the Trustee's motion to dismiss that claim. Moreover, the Court urges the Trustee to consider consenting to the requested modification of the injunctions, absent some proper basis of which the Court is unaware to decline to do so. If the Trustee is unwilling to stipulate to the requested modification, the Court will entertain a motion by plaintiffs to modify the injunctions.

## III. Plaintiffs' Claims Against the Trustee For Deficient Enforcement of Rosenberg's Settlement Obligations (Second & Third Claims)

Plaintiffs also assert claims against the Trustee for (i) specific performance of certain asset sales authorized by the Rosenberg settlement—sales that plaintiffs allege are needed to recover the full amount owed by Rosenberg (second claim), and (ii) damages caused by the Trustee's alleged

breaches of fiduciary duty, gross negligence and willful misconduct in failing to take proper steps to collect the full settlement sum owed by Rosenberg (third claim). The Trustee seeks dismissal of these claims on two grounds: first, that plaintiffs lack standing because they are not creditors of the Creditor Trust and therefore could not have been harmed by his conduct; and second, that his actions are protected by the qualified immunity and business judgment doctrines.

The Court concludes that plaintiffs have standing to assert these claims. Plaintiffs have asserted two legally sufficient claims against the Creditor Trust that, if ultimately allowed, would entitle them to a monetary distribution: the twelfth claim, for recovery of the January 2020 transfer, and the thirteenth claim, for slander of title. If either claim were allowed but, as a result of the Trustee's alleged failings, were paid less than in full, plaintiffs would suffer direct harm. Plaintiffs therefore have standing to seek redress—specific performance to the extent needed to maximize Trust recoveries, and a damages recovery from the Trustee to the extent needed to make them whole.

Turning to the merits of the second and third claims, including the qualified immunity and business judgment defenses asserted by the Trustee, the Court concludes that further consideration of these claims would be premature at the present time. The Trust has already collected the great bulk of the amounts Rosenberg owes, and it appears likely to collect the remaining balance in coming months, thereby eliminating any possible basis for these claims. Further litigation over claims that are likely to be rendered moot in the near future would be wasteful. The Court therefore will stay those claims, without prejudice to plaintiffs' right to move to vacate the stay if circumstances warrant.

## IV. Hart's Claim to Recover the January 2020 Transfer (Twelfth Claim & Administrative Expense Motion)[12]

As noted, Hart's main claim against the Trust and the Trustee—and the one she asserts in her administrative expense motion as well as in the complaint—is her claim to recover the $1.65 million that Schreiber wired to the Debtors in January 2020. Hart claims that the transferred monies belonged to her, not Rosenberg, and that under the law of conversion, unjust enrichment or constructive trust, the Creditor Trust is required to remit these funds to her.[13]

This claim arises out of a series of transactions involving Alrose Dagny, a limited liability company that Rosenberg formed in 2016 to acquire two commercial properties in Astoria, Queens. In September 2019, Alrose Dagny refinanced its mortgage, a transaction that yielded almost $2.8 million in net proceeds. At the time of the refinancing, Alrose Dagny was managed by Rosenberg, who owned 67.35% of the company's membership interests through a company that he wholly owned, Alrose Steinway, LLC ("Alrose Steinway"). Hart owned the remaining 32.65% of Alrose Dagny's membership interests. In addition, as security for several loans that Hart had made to him, Rosenberg had pledged and assigned all of his ownership interests in Alrose Steinway to Hart.

In both the complaint and her administrative expense motion, Hart claims that Rosenberg was required to distribute 100% of the refinancing proceeds to her, by virtue of her minority equity stake in Alrose Dagny and his pledge to her of Alrose Steinway's majority equity stake, but that he instead wrongfully diverted the refinancing proceeds for his personal benefit. He allegedly did

---

[12] The facts discussed in this section IV are taken from the allegations of the complaint, as well as Hart's substantially identical factual assertions in her administrative expense motion, which the Court assumes to be true for purposes of the Trustee's motion to dismiss.

[13] In the adversary proceeding, this claim is purported to be brought by "plaintiffs," *i.e.*, both Hart and Dagny Enterprises. However, the complaint does not allege that Dagny Enterprises had any involvement in the events giving rise to this claim or any entitlement to the transferred monies. The Court will therefore dismiss the twelfth claim to the extent it is brought on behalf of Dagny Enterprises. That leaves Hart as the sole plaintiff for this claim.

so in several steps. First, in November 2019, he instructed one of his lawyers to wire $275,000 of the refinancing proceeds to his girlfriend, children and associates, and to wire the almost $2.5 million balance to his close friend, Michael Schreiber. He then directed Schreiber to wire $750,000 to Rosenberg's law firm, White & Williams, in satisfaction of his personal legal fees. Subsequently, in January 2020, Schreiber wired the bulk of the remaining funds, amounting to $1.65 million, to the Debtors' bank account, in partial satisfaction of the Trustee's settlement payment obligation.[14] Hart alleges that she did not learn of Rosenberg's misappropriation of the Alrose Dagny refinancing proceeds until July 2025, when she was preparing the complaint. At that time, she demanded that the Trustee turn over the $1.65 million to her, and he refused.

The crux of Hart's claim against the Trust, in both the complaint and her administrative expense motion, is that the $1.65 million transferred to the Debtors belonged to her, not Rosenberg, and that the Trust should therefore be required to turn over these monies to her. She claims that she is entitled to almost one-third of these funds by virtue of her 32.65% membership interest in Alrose Dagny, and that she is entitled to the balance of the funds by virtue of Rosenberg's pledge and assignment to her of his 67.35% membership interests in Alrose Steinway.

While Hart has been consistent about the factual allegations on which she bases this claim, her identification of the legal basis for this claim has been less so. Her administrative expense motion describes her claim as an administrative expense claim arising from the Trustee's conversion of her funds. *See* Hart's Motion for Administrative Expense Claim, *In re Alrose Allegria, LLC*, Case No. 15-11760 (Bankr. S.D.N.Y. 2015), ECF No. 583 at ¶¶ 60, 64-66; *see also*

---

[14] Hart alleges that Schreiber wired these funds to the Debtors not at Rosenberg's direction, but instead because he had become concerned that Rosenberg's and his conversion of the financing proceeds might be discovered. This allegation is of little moment. As discussed below, the Trust's liability for conversion of these funds does not turn on whether Rosenberg directed the transfer, but rather on whether the funds received by the Debtors belonged to Hart.

Hart's Reply Brief, *In re Alrose Allegria, LLC*, Case No. 15-11760 (Bankr. S.D.N.Y. 2015), ECF No. 592 at 8-18 (stating that her claim is an administrative expense claim, not a conversion claim, but then extensively briefing the law of conversion). The adversary proceeding complaint labels her twelfth claim as one for unjust enrichment and constructive trust, but again bases this claim on the Trustee's alleged conversion of her funds. *See* Complaint, *Dagny Enterprises v. Silverman (In re Alrose Allegria, LLC)*, Adv. Proc. No. 25-01124 (Bankr. S.D.N.Y. 2025), ECF No. 1 at ¶ 426 (Trustee and Creditor Trust have been "unjustly enriched at the expense of Penny [Hart] by retaining the money that belongs to Penn[y], which money was wrongfully obtained and kept by them"); *see also* Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss Counts 1, 2, 3, 12, 13, and 19 of the Complaint, *Dagny Enterprises v. Silverman (In re Alrose Allegria, LLC)*, Adv. Proc. No. 25-01124 (Bankr. S.D.N.Y. 2025), ECF No. 20 at 6 ("[T]he Trustee and the Creditor Trust have been unjustly enriched by the conversion of Penny [Hart]'s funds."); *id.* at 29 (same).

Ultimately, Hart's inconsistent labeling of her claim does not matter. "A court assessing the sufficiency of a complaint must disregard legal labels or conclusions. . . . Instead, the court must examine only the well-pleaded factual allegations." *Ricardo Moncada v. Nuna Baby Essentials, Inc.*, 831 F. Supp. 3d 268, 276 (S.D.N.Y. 2026) (internal quotation marks and citations omitted). As discussed below, the Court concludes that Hart has alleged facts sufficient to state a claim of conversion with respect to a portion of the $1.65 million January 2020 transfer—specifically, 32.65% of that sum, or $538,725—but not with respect to the balance of that transfer. To the extent Hart ultimately proves all elements of this claim, including by tracing the transferred funds from Alrose Dagny to the Trustee, the claim will be entitled to administrative expense priority. The Court will therefore deny the Trust's motion to dismiss Hart's conversion claim to the extent it

seeks to recover the former portion of the January 2020 transfer, but will dismiss the remainder of this claim with prejudice. In addition, because Hart has failed to state a claim for unjust enrichment or constructive trust, the Court will dismiss those claims with prejudice.

**A. Conversion**

**1. Hart has properly pleaded conversion**

The elements of a conversion claim under New York law are well established. Conversion is the "unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *V&A Collection, LLC v. Guzzini Props. Ltd.*, 46 F.4th 127, 133 (2d Cir. 2022) (internal quotation marks and citation omitted); *see also State of N.Y. v. Seventh Regiment Fund*, 98 N.Y.2d 249, 259 (N.Y. 2002). "Two key elements of conversion are (1) plaintiff's possessory right or interest in the property . . . and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." *Colavito v. N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43, 50 (N.Y. 2006) (internal citations omitted). Money may be the subject of a conversion claim where there is "a specific, identifiable fund and an obligation to return or otherwise treat in a particular manner the specific fund in question." *Fam. Health Mgmt., LLC v. Rohan Devs., LLC*, 207 A.D.3d 136, 139 (1st Dep't 2022) (citing *Mfrs. Hanover Tr. Co. v. Chem. Bank*, 160 A.D.2d 113, 124 (1st Dep't 1990)). Further, wrongful intent on the part of the defendant "is not an element of an otherwise valid conversion claim." *LoPresti v. Terwilliger*, 126 F.3d 34, 42 (2d Cir. 1997). To the contrary, "a party may be liable for conversion even if it acted in good faith, and without knowledge of the plaintiff's claim on the property." *V&A Collection*, 46 F.4th at 133–34.

As noted, Hart claims that 32.65% of the $1.65 million refinancing proceeds paid to the Trustee, or $538,725, belonged to her on account of her minority ownership stake in Alrose Dagny,

and that the balance of the transferred funds belonged to her by virtue of Rosenberg's pledge and assignment to her of his Alrose Steinway membership interests. The Court will address these two portions of Hart's conversion claim in turn.

**a. Hart's claim to 32.65% of the transferred monies on account of her minority ownership stake in Alrose Dagny**

Hart claims, and the Trustee does not dispute, that under New York's Limited Liability Law, any distributions of the Alrose Dagny refinancing proceeds were required to be made to Alrose Steinway and Hart in accordance with their respective membership shares. *See* N.Y. LTD. LIAB. CO. LAW § 504 (McKinney 2026) ("Distributions of cash or other assets of a limited liability company shall be allocated among the members."). She alleges that, at all relevant times, she had a 32.65% membership interest in Alrose Dagny, entitling her to a distribution of 32.65% of the refinancing proceeds, but that, instead of distributing those monies to her, Rosenberg wrongfully diverted them for his personal benefit, including by causing $1.65 million of the proceeds to be transferred to the Trustee in partial satisfaction of Rosenberg's settlement obligation. As a result, she claims, she is entitled to 32.65% of those transferred monies.

These allegations satisfy the black letter elements of a conversion claim under New York law: that Hart had a legally enforceable interest in a portion of the transferred funds—namely, the portion that she was entitled to be paid by virtue of her 32.65% ownership of Alrose Dagny—and that the Trustee acquired those funds in derogation of her rights. *See Colavito*, 8 N.Y.3d at 49-50. To prevail on summary judgment or at trial, Hart will need to satisfy applicable tracing requirements, but for Rule 12(b)(6) purposes, her allegations identify the transferred funds with sufficient specificity and plausibility to defeat the motion to dismiss.

The district court's decision in *Newbro v. Freed*, 409 F. Supp. 2d 386 (S.D.N.Y. 2006), *aff'd*, 2007 WL 642941 (2d Cir. 2007), is instructive. There, a crooked financial advisor transferred

funds from the plaintiff's brokerage account into the defendants' brokerage accounts without either party's knowledge or participation. *Id.* at 391. The court granted summary judgment to the plaintiff on its conversion claim, holding that the innocent recipients were required to return the misappropriated funds. *Id.* at 397. In doing so, the court reaffirmed that "[m]oney may be the subject of conversion if it is specifically identifiable and there is an obligation to return it or treat it in a particular manner." *Id.* at 394 (quoting *Hoffman v. Unterberg*, 9 A.D.3d 386, 388 (2d Dep't 2004)). The court also rejected defendants' argument that their receipt of the funds in satisfaction of a pre-existing obligation insulated them from liability: Although the financial advisor "may have owed defendants $1 million before the transfer, . . . 'one who receives money from a thief in satisfaction of a pre-existing debt does not have a defense against the person from whom the money was stolen.'" *Newbro*, 409 F. Supp. 2d at 397 (quoting *Eisenberg v. Grant Bank for Savings, FSB*, 207 F. Supp. 2d 553, 559 (S.D. Miss. 2002)).

The facts alleged by Hart parallel *Newbro*'s facts in key respects. Here, as in *Newbro*, a wrongdoer (Rosenberg) misappropriated funds that belonged to the plaintiff (Hart) and transferred them to an innocent third party (the Trustee) to satisfy a debt which the wrongdoer owed to that third party. *Newbro* thus squarely supports the proposition that neither the recipient's innocence nor the fact that the transfer satisfied a pre-existing obligation defeats the conversion claim.

The Trustee contends that, to sufficiently plead conversion, Hart must have had ownership, possession or control of the money before the conversion. New York law does not support this contention. *See Weizmann Inst. of Sci. v. Neschis*, 229 F. Supp. 2d 234, 253 (S.D.N.Y. 2002) (finding that the plaintiffs had adequately pleaded conversion premised upon a future interest in funds); *see also Lama v. Malik*, 58 F. Supp. 3d 226, 236-37 (E.D.N.Y. 2014) (rejecting defense that plaintiffs "never had 'possession, ownership or control' over the property" on ground that the "right

of possession may include a future right to possession"); *Guiffrida v. Storico Dev., LLC*, 60 A.D.3d 1286, 1287 (4th Dep't 2009) (plaintiff was entitled to damages for conversion "despite the allegation that plaintiff did not actually own the property" because plaintiff had "an immediate superior right of possession to the property").

By accepting and retaining monies that belonged to Hart, and then refusing to remit the funds to her upon demand, the Trustee exercised unauthorized dominion and control over her property. Hart has therefore properly pleaded a claim for conversion of the portion of the January 2020 transfer that belonged to her on account of her minority ownership stake in Alrose Dagny—that is, 32.65% of the $1.65 million, or $538,725.

**b. Hart's claim to the balance of the transferred monies on account of Rosenberg's pledge of his Alrose Steinway membership interests**

Hart alleges that the balance of the January 2020 transfer also belonged to her, and the Trustee's refusal to return those monies therefore constituted conversion, by virtue of Rosenberg's pledge and assignment to her of his Alrose Steinway membership interests. This claim fails as a matter of law.

In the first place, the terms of the pledge and assignment agreements, which are attached to the complaint, do not support this claim. *See Bruce v. Citigroup, Inc. (In re Bruce)*, 676 B.R. 683, 694 (Bankr. S.D.N.Y. 2026) ("On a motion to dismiss pursuant to Rule 12(b)(6), . . . the Court may consider 'any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference.'") (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)). The pledge and assignment agreements granted Hart a security interest only in Rosenberg's membership interests in Alrose Steinway and the proceeds thereof, not in Alrose Dagny's assets or distributions. Because the proceeds of the Alrose Dagny refinancing were

never distributed to Alrose Steinway, much less by Alrose Steinway, Hart's security interest did not attach to those proceeds.

This conclusion follows from the clear language of these two agreements. The September 20, 2016 pledge agreement provided that Rosenberg granted Hart a "valid and binding first security interest in (i) the Alrose Steinway Equity Interest and the proceeds therefrom; and (ii) any and all distributions, other than Tax Distributions, to which [Rosenberg] may be entitled to receive from Alrose Steinway." Pledge Agreement, *Silverman v. Rosenberg (In re Alrose Allegria, LLC)*, Adv. Proc. No. 25-01124 (Bankr. S.D.N.Y. 2025), ECF No. 1-9 at § 1.[15] In addition, the pledge agreement required Rosenberg to exercise his voting rights at Alrose Dagny and Alrose Steinway (i) to cause Alrose Dagny to distribute its "distributable dollars" to Alrose Steinway in proportion to that company's ownership interest in Alrose Dagny, and (ii) to cause Alrose Steinway to distribute to Hart any Alrose Dagny distributions it received, in satisfaction of Rosenberg's outstanding indebtedness to her. *See* Pledge Agreement at § 2(c)(ii). The separate assignment agreement provided: "For value received, Allen Rosenberg, hereby sells, assigns, transfers and conveys unto Penny Hart one hundred percent (100%) of the Membership Interests in Alrose Steinway, LLC." Assignment of Membership Interests, *Silverman v. Rosenberg (In re Alrose Allegria, LLC*), Adv. Proc. No. 25-01124 (Bankr. S.D.N.Y. 2025), ECF No. 1-10 at § 1.

By its plain terms, the pledge agreement granted Hart a security interest only in Rosenberg's membership interests in Alrose Steinway and the proceeds thereof (*e.g.*, distributions Rosenberg was entitled to receive from Alrose Steinway); it did not grant a security interest in the assets of Alrose Steinway's subsidiary, Alrose Dagny, or in any distributions made by Alrose

---

[15] The pledge agreement defines the "Alrose Steinway Equity Interest" as Rosenberg's 100% membership interests in Alrose Steinway. *Id.* at 1 (Preamble).

Dagny. The assignment agreement, similarly, was limited to Rosenberg's membership interest in Alrose Steinway and the proceeds thereof. Consequently, Hart's security interest did not attach to the Alrose Dagny refinancing proceeds. It would only have attached to those proceeds if Rosenberg had caused Alrose Dagny to distribute the proceeds to Alrose Steinway, thereby bringing these monies within the scope of the pledge agreement.

Of course, the pledge agreement required Rosenberg to do just that—to cause Alrose Dagny to make any and all distributions to Alrose Steinway, rather than to himself or others—so that Hart's security interest in his Alrose Steinway membership interests would attach to the funds. *See id.* at § 2(c)(ii). But Rosenberg did not honor his obligations under the pledge agreement, and as a result, Hart does not have a security interest in the proceeds.

It could be argued that Rosenberg unperformed pledge agreement obligations give Hart an equitable entitlement to the proceeds—an "interest in [that] property," *Colavito*, 8 N.Y.3d at 50—sufficient to support her conversion claim for the entire January 2020 transfer. However, the Court need not decide this novel issue, because of a second hurdle faced by Hart' claim: Any security interest that Hart could potentially have acquired in the Alrose Dagny refinancing proceeds would have terminated upon the transfer of those monies to the Debtors. Rosenberg's breach of his pledge agreement obligations did not deprive her of a lien on the monies held by the Debtors, because she could not under any circumstances have acquired such a lien.

This conclusion is mandated by section 9-332(c) of the Uniform Commercial Code, which New York has adopted without modification. *See* N.Y. U.C.C. LAW § 9-332(c) (McKinney 2026). That section provides that "[a] transferee of electronic money takes the money free of a security

interest if the transferee obtains control of the money without acting in collusion with the debtor in violating the rights of the secured party." *Id.*[16]

As Official Comment 3 to UCC § 9-332 explains, the UCC's drafters adopted this provision "to ensure that security interests in deposit accounts do not impair the free flow of funds":

> Rules concerning recovery of payments traditionally have placed a high value on finality. The opportunity to upset a completed transaction, or even to place a completed transaction in jeopardy by bringing suit against the transferee of funds, should be severely limited.

N.Y. U.C.C. LAW § 9-332 cmt. 3 (McKinney 2026). To this end, the UCC's drafters adopted the "most protective (i.e., least stringent) of the various standards now found in the UCC"—namely, the mere absence of "collusion" between the transferee and the debtor to violate the secured party's rights, a standard borrowed from UCC Article 8. *See id.* § 9-332 cmt. 4. As the official comments to Article 8 in turn make clear, the "collusion" standard requires that the person "affirmatively engaged in wrongful conduct, rather than casting . . . any burden of showing that [they] had no awareness of wrongful conduct." N.Y. U.C.C. LAW § 8-503 cmt. 3.[17] Courts have faithfully applied this "most protective" standard to shield recipients of money transfers from liability. *See, e.g.*, *Armstrong Bank v. Shraiberg, Landau & Page, P.A. (In re Tuscany Energy, LLC)*, 581 B.R. 681,

---

[16] Article 9 applies to "a transaction, regardless of its form, that creates a security interest in personal property or fixtures by contract." N.Y. U.C.C. LAW § 9-109(a)(1) (McKinney 2026). Rosenberg's pledge of his membership interest in Alrose Steinway to Hart falls squarely within the scope of Article 9. *See, e.g.*, *Angell v. Faison (In re Faison)*, 518 B.R. 849, 858 (Bankr. E.D.N.C. 2014) ("An interest in a limited liability company is typically held to be a 'general intangible' subject to the rules of perfection contained in Article 9 of the Uniform Commercial Code."); *Davis v. Brown (In re Brown)*, 479 B.R. 112, 116–17 (Bankr. D. Kan. 2012) (same).

[17] Comment 5 to UCC § 8-115 elaborates further on the collusion standard:

> The collusion test is intended to adopt a standard akin to the tort rules that determine whether a person is liable as an aider or abettor for the tortious conduct of a third party. *See* Restatement (Second) of Torts § 876. Knowledge that the action of the customer is wrongful is a necessary but not sufficient condition of the collusion test.

N.Y. U.C.C. LAW § 8-115 cmt. 5.

690 (Bankr. S.D. Fla. 2018) (holding that "[m]ere knowledge . . . that the transferor's act is wrongful is not sufficient to support a claim of collusion" under UCC § 9-332); *Walters v. Lynch (In re 3PL4PL, LLC)*, 619 B.R. 441, 473-74 (Bankr. D. Colo. 2020) (following *In re Tuscany Energy*).

Here, plaintiffs have not alleged any collusion on the part of the Trustee. To the contrary, at the May 14, 2026 hearing, plaintiffs' counsel acknowledged that any culpability the Trustee may have in connection with the January 2020 transfer amounts, at most, to negligence. *See* Transcript, *Dagny Enterprises v. Silverman (In re Alrose Allegria, LLC)*, Adv. Proc. No. 25-01124 (Bankr. S.D.N.Y. 2025), ECF No. 62 at 50. Consequently, under the plain terms of UCC § 9-332, any security interest Hart might have acquired in the Alrose Dagny refinancing proceeds had Rosenberg complied with his pledge agreement obligations—and any resulting equitable entitlement she might claim to those proceeds—would have terminated once those funds were transferred to the Debtors. The Court will therefore dismiss Hart's conversion claim with prejudice, and deny her administrative expense motion, to the extent Hart seeks to recover any portion of the January 2020 transfer beyond the 32.65% share of that transfer to which she was entitled by virtue of her ownership stake in Alrose Dagny.

**2. Hart's conversion claim is not time-barred**

It is undisputed that, under New York law, a conversion claim is subject to a three-year statute of limitations. *See* CPLR 214(3). The Trustee contends that the statute of limitations on Hart's conversion claim began to run in January 2020, when the allegedly wrongful transfer

occurred, rendering her claim time-barred because she did not file her administrative expense motion or the complaint until five years later, in 2025.[18]

The Court disagrees. Accepting Hart's allegations as true, as the Court must for purposes of the motion to dismiss, Hart's conversion claim did not accrue, and the statute of limitations therefore did not begin to run, until July 2025, when Hart learned of the January 2020 transfer and demanded that the Trustee remit the transferred funds to her.

Under New York law, when a conversion claim accrues depends on the nature of the defendant's possession. If the defendant is a wrongful possessor—that is, if "the defendant knows it has no right to the goods," *Seventh Regiment*, 98 N.Y.2d at 260—the claim accrues at the time of the conversion. By contrast, where the defendant comes into possession lawfully, the claim does not accrue, and the statute of limitations does not begin to run, until the plaintiff demands the return of the property and the defendant refuses. This is the well-established "demand-and-refusal" rule. *See, e.g.*, *Hoelzer v. City of Stamford, Conn.*, 933 F.2d 1131, 1136 (2d Cir. 1991) ("[W]here an owner proceeds against a rightful possessor of property, 'the limitations period begins to run only when the owner demands return of the property and the purchaser refuses.'" (citing *DeWeerth v. Baldinger*, 836 F.2d 103, 106 (2d Cir. 1987))); *see also Seventh Regiment*, 98 N.Y. 2d at 260-61.

Although the demand-and-refusal rule appears to have originated in cases involving *bona fide* purchasers of goods, courts have not confined it to that context. Rather, courts have applied

---

[18] As noted, the complaint characterizes Hart's claim to recover the January 2020 transfer as an unjust enrichment or constructive trust claim, albeit one resting on conversion principles. Hart has argued that this claim is therefore subject not to the three-year statute of limitations for conversion but instead to the CPLR's six-year "catch-all" statute of limitations, which courts have applied to unjust enrichment claims. *See* N.Y. C.P.L.R. 213(1) (six-year statute of limitations for "an action for which no limitation is specifically prescribed by law"). However, as discussed in section IV.B below, when an unjust enrichment rests on the same factual allegations as another claim, such as conversion, courts have consistently dismissed the unjust enrichment claim. *See also Shak v. JPMorgan Chase & Co.*, 156 F. Supp. 3d 462, 479 (S.D.N.Y. 2016) ("[W]hen an unjust enrichment claim 'is merely incidental to or duplicative of another claim with a shorter limitations period,' the shorter period will apply." (citation omitted)).

this rule whenever the defendant's initial possession was lawful, including in cases involving intangibles, *see, e.g.*, *SongByrd, Inc. v. Est. of Grossman*, 206 F.3d 172, 183 (2d Cir. 2000) (disputed ownership of intellectual property), or transfers of money, *see Regions Bank v. Wieder & Mastroianni, P.C.*, 526 F. Supp. 2d 411, 414–15 (S.D.N.Y. 2007), *aff'd*, 268 F. App'x 17 (2d Cir. 2008); *see also Newbro*, 409 F. Supp. 2d at 394–97, 402 (applying demand-and-refusal rule to determine when conversion claim accrued for purposes of calculating prejudgment interest).

The Court is aware of no reason why the demand-and-refusal rule should not be applied here. In its 2002 *Seventh Regiment* decision, the New York Court of Appeals explained that the principal rationale for the demand-and-refusal rule is to protect innocent possessors, by providing "an opportunity to deliver the property to the true owner, before [the defendant] shall be made liable as a *tort feasor* for a wrongful conversion." *Seventh Regiment*, 98 N.Y. 2d at 260 (emphasis in original) (internal quotation marks and citations omitted). The Court of Appeals added that, in some cases, deferral of a cause of action's accrual can avoid the unfair results that strict accrual principles would otherwise produce. *See id.* at 261 (courts sometimes apply "equitable principles to prevent a party that steals or breaches trust, or the successor to such a party, from benefitting from its wrong."). Both of these rationales apply here. It is appropriate for the Trustee to have had an opportunity to return the transferred funds before he and the Trust were sued for conversion. In addition, if as Hart alleges, she had no knowledge of the conversion of her funds until more than five years after the wrongful transfers, it would be inequitable to bar her conversion claim on statute of limitations grounds.[19]

---

[19] As the Court of Appeals acknowledged, the demand-and-refusal rule can have "anomalous" consequences. In particular, an owner who belatedly discovers a theft may prefer to sue a lawful possessor, against whom the claim does not accrue until demand and refusal, than to sue the thief or a wrongful possessor, against whom the claim accrued immediately. *Id.* But while the wisdom of this rule could perhaps be debated, the job of a federal court applying state law is not to make its own policy judgments but instead to predict how the state's highest court would rule. *See*

It is undisputed that the Trustee did not have actual knowledge of Hart's alleged entitlement to the $1.65 million wired to the Debtors in January 2020.[20] He therefore was a lawful possessor, not a wrongful possessor, for purposes of the demand-and-refusal rule. *See Seventh Regiment*, 98 N.Y. 2d at 260 (a wrongful possessor "knows it has no right to the goods"); *see also Rep. of Turkey v. Christie's Inc.*, 425 F. Supp. 3d 204, 213 (S.D.N.Y. 2019) ("Where the possessor has no knowledge that the property is not his, there can be no conversion in the absence of a demand and refusal. . . ." (emphasis omitted)). As a result, Hart's conversion claim did not accrue, and the three-year statute of limitations did not begin to run, until July 2025, when she demanded return of the funds and the Trustee refused.[21] The Court therefore will deny the Trustee's motion to dismiss Hart's conversion claim on statute of limitations grounds.

**B. Unjust Enrichment**

Under New York law, unjust enrichment is a "quasi-contract claim and contemplates an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties." *Columbia Mem'l Hosp. v. Hinds*, 38 N.Y.3d 253, 275 (N.Y. 2022) (internal quotation

---

*Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir. 1994) ("[T]he job of the federal courts is carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity."). The Court has attempted to do that here.

[20] The Trustee has consistently denied having had any actual, or even constructive, knowledge that the monies belonged to Hart. Moreover, as already noted, plaintiffs' counsel has acknowledged that the Trustee was at most negligent in this regard. *See* Transcript, *Dagny*, Adv. Proc. No. 25-01124, ECF No. 62 at 50.

[21] One wrinkle is worth noting. For purposes of the present motion to dismiss, the Court assumes the truth of Hart's allegations, including that she did not learn until July 2025 that Rosenberg had wrongfully diverted the Alrose Dagny refinancing proceeds. If these allegations ultimately prove to be false—in particular, if the Trustee proves that Hart had actual knowledge of Rosenberg's and Schreiber's transfers prior to 2025 and unreasonably delayed in demanding that the Trustee return the transferred funds—this might cause her conversion claim to have accrued at that earlier time. *See SongByrd*, 206 F.3d at 183 (once a true owner discovers the location of its property, it is required to make demand the property's return "without unreasonable delay"); *accord Lubell*, 77 N.Y.2d at 319. It bears note that this is an actual, not a constructive, knowledge standard; a showing that Hart should have discovered the diversion of the proceeds at an earlier time would not be sufficient. *See SongByrd*, 206 F.3d at 183 (New York law does not require a plaintiff to "exercise due diligence in locating its chattel"); *accord Lubell*, 77 N.Y. 2d at 310.

marks and citation omitted). To state a claim for unjust enrichment under New York law, a plaintiff must allege that "(1) defendant was enriched (2) at plaintiff's expense, and (3) that it is against equity and good conscience to permit defendant to retain what is sought to be recovered." *Kaplan v. Reed Smith LLP*, 919 F.3d 154, 160 (2d Cir. 2019) (internal quotation marks and citation omitted); *accord Myun-Uk Choi v. Tower Rsch. Cap. LLC*, 890 F.3d 60, 69 (2d Cir. 2018); *Columbia Mem'l Hosp. v. Hinds*, 38 N.Y.3d 253, 275 (N.Y. 2022).

On its face, this standard would seem to be satisfied by Hart's allegations. To the extent the monies transferred to the Debtors belonged to Hart, it would seem to follow that the Debtors were unjustly enriched at Hart's expense. However, the New York Court of Appeals has held that "unjust enrichment is not a catchall cause of action":

> An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim. . . .
>
> . . . To the extent [plaintiffs' other] claims succeed, the unjust enrichment claim is duplicative; if plaintiffs' other claims are defective, an unjust enrichment claim cannot remedy the defects.

*Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790-91 (N.Y. 2012) (internal citations omitted); *accord FDIC v. Concordia*, 2024 WL 4362783, at *5 (S.D.N.Y. 2024) ("Both New York state courts and courts in this Circuit have, consistent with *Corsello*, dismissed unjust enrichment claims where the allegations supporting the claim are identical to those underpinning a conventional tort or contract claim asserted in the same pleading, including claims of conversion.").

This rule bars Hart's unjust enrichment claim, which duplicates her conversion claim. Each of these claims rests on the same factual allegations: at bottom, that the Debtors received and refused to return monies that belonged to her. The Court will therefore dismiss Hart's unjust enrichment claim with prejudice.

**C. Constructive Trust**

As noted, the complaint also asserts a constructive trust claim on the basis of the same allegations advanced in support of Hart's conversion and unjust enrichment claims. This claim is legally insufficient.

Under New York law, "a party seeking to impose a constructive trust must ordinarily establish four elements: (i) a confidential or fiduciary relationship; (ii) a promise, express or implied; (iii) a transfer made in reliance on that promise; and (iv) unjust enrichment." *In re Ames Dep't Stores, Inc.*, 274 B.R. 600, 625 (Bankr. S.D.N.Y. 2002) (citing *In re Koreag, Controle et Revision S.A.*, 961 F.2d 341, 352 (2d Cir. 1992)), *aff'd*, 2004 WL 1948754 (S.D.N.Y. 2004), *aff'd*, 144 F. App'x 900 (2d Cir. 2005).

It is clear that Hart has failed to adequately plead the first three of these elements. At the time Schreiber wired the $1.65 million to the Debtors, in January 2020, Hart was not a creditor of the Debtors, and thus no fiduciary relationship existed between the chapter 11 trustee and Hart (element # 1). Nor does the complaint allege that the trustee made any express or implied promise to her (element # 2), much less that the January 2020 transfer was made in reliance on such a promise (element # 3). Consequently, Hart has failed to state a claim for the imposition of a constructive trust, and the Court will dismiss that claim with prejudice.

**D. Hart Has Standing to Assert Her Conversion Claim**

The Trustee contends that Hart's conversion claim belongs to Alrose Dagny, not Hart, because the claim rests, at bottom, on the allegation that Rosenberg misappropriated Alrose Dagny's funds. He argues that Hart therefore lacks standing to bring the claim as a direct claim, but could only bring the claim as a derivative claim on Alrose Dagny's behalf. The Court disagrees.

Hart's conversion claim is not derivative of Alrose Dagny's rights; it is a direct claim, which Hart has standing to bring on her own behalf.

"Whether a claim is derivative or direct is a question of state law." *Seibel v. Frederick*, 2020 WL 1847792, at *3 (S.D.N.Y. 2020) (quoting *Bartfield v. Murphy*, 578 F. Supp. 2d 638, 645 (S.D.N.Y. 2008)). Under New York law, "a court must 'look to the nature of the wrong and to whom the relief should go' to determine whether a corporate stockholder's claim for breach of fiduciary duty is derivative or direct." *In re 305 E. 61st St. Grp. LLC*, 130 F.4th 272, 279 (2d Cir. 2025) (quoting *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004)); *see also In re Celsius Network LLC*, 2026 WL 1948372, at *9 (Bankr. S.D.N.Y. 2026) ("New York lacks a clear approach to determine whether a claim is direct or derivative; however, the First, Second, and Third Departments, as well as the Second Circuit have applied the test adopted by the Delaware Supreme Court in *Tooley*."); *see also 305 E. 61st St. Grp.*, 130 F.4th at 279 (for a claim to be direct, "the stockholder's alleged injury must be independent of any alleged injury to the corporation").

Applying the *Tooley* standard—that is, looking "to the nature of the wrong and to whom the relief should go," *In re 305 E. 61st St. Grp.*, 130 F.4th at 279 (quoting *Tooley*, 845 A.2d at 1039)—the Court finds that Hart's claim is direct, not derivative. The wrong alleged by Hart is not that Rosenberg caused Alrose Dagny to distribute its refinancing proceeds; to the contrary, she contends that Alrose Dagny's operating agreement required these proceeds to be distributed to the LLC's members. Rather, the wrong she alleges is that Rosenberg misappropriated her 32.65% share of the distribution—a harm to her, not to Alrose Dagny. Moreover, the remedy she seeks is not that the distribution be returned to Alrose Dagny, but rather, that her share of the distribution

be remitted to her by its recipients (Rosenberg, Schreiber and/or the Trust). In both of these respects, her claim is direct, not derivative.

New York courts have recognized injuries of the sort Hart alleges to be direct injuries giving rise to direct claims. *See, e.g.*, *Gjuraj v. Uplift Elevator Corp.*, 110 A.D.3d 540, 540 (1st Dep't 2013) (holding that minority shareholder had standing to assert direct claim that majority owner failed to pay him his share of corporate profits); *see also Pokoik v. Pokoik*, 115 A.D.3d 428, 429 (1st Dep't 2014) (recognizing similar direct claim in LLC context). The Court therefore will deny the Trustee's motion to dismiss this claim on standing grounds.

**E. Hart's Conversion Claim is Entitled to Administrative Expense Priority**

Hart contends that her conversion claim is entitled to administrative expense status under section 503(b) of the Bankruptcy Code, which permits the allowance of administrative expenses, including the "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). Such administrative expenses have priority in the distribution of the assets of the bankruptcy estate. *See* 11 U.S.C. § 507(a)(2).

It has long been settled that postpetition tortious conduct by a debtor or trustee may give rise to an administrative expense claim against the estate. *See Reading Co. v. Brown*, 391 U.S. 471, 482 (1968) (holding that postpetition tort claims are "actual and necessary costs" of administering bankruptcy estate); *see also Palley v. Refco Inc. (In re Refco Inc.)*, 331 F. App'x 12, 13 (2d Cir. 2009) ("post-petition tort claims are given administrative priority"); *Buena Vista Television v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 307 B.R. 404, 422 (Bankr. S.D.N.Y. 2004) ("The actual, necessary costs and expenses of preserving the estate have been held, since the days of the old Bankruptcy Act, to also include post-petition torts committed by a trustee or debtor-in-possession . . ." (internal quotation marks and citation omitted)). As a tort, conversion

qualifies for administrative priority when committed by a debtor-in-possession or a bankruptcy trustee. *See In re Enron Corp.*, 2003 WL 1562201, at *4 (Bankr. S.D.N.Y. 2003) ("As conversion is a tort, a claim based on a post-petition conversion by the debtor-in-possession would be accorded administrative priority as an actual and necessary expense for the privilege of continuing to operate the business.").

Here, the conversion alleged by Hart occurred during the Debtors' bankruptcy cases and enriched the Debtor's estates. Consequently, to the extent the claim is allowed, it will be entitled to administrative expense priority under section 503(b).

**V. Plaintiffs' Slander of Title Claim (Thirteenth Claim)**

Plaintiffs assert a slander of title claim against the Trustee for wrongfully publishing a false statement concerning a property owned by Dagny Enterprises. Specifically, the complaint alleges that, based on Rosenberg's statement that he owned Dagny Enterprises, the Trustee in March 2023 filed a UCC-1 financing statement against one of that company's properties (751 Concourse Village West, in the Bronx). Plaintiffs allege that Rosenberg had no ownership interest in Dagny Enterprises at this time; rather, Hart has been that company's sole owner at all times since January 1, 2017. In December 2023, and again in July 2024, plaintiffs sent the Trustee a letter advising him of these facts, citing the 2023 decision of the New York court (discussed in section II above) that dismissed Rosenberg's claim to have an interest in Dagny Enterprises, and demanding that he terminate the UCC filing. *See* Exhs. U & V to Complaint, *Dagny*, Adv. Proc. No. 25-01124, ECF Nos. 1-22, 1-23. Despite these two letters, the Trustee did not terminate the filing until July 2025. As a result, plaintiffs allege, Dagny Enterprises was unable to refinance the property's mortgage when it matured in December 2024, causing it to suffer more than $4 million in damages.

The Trustee seeks dismissal of this claim on the ground that plaintiffs have failed to state a claim for slander of title. As the Trustee notes, under New York law, a slander of title claim has

three required elements: (i) a communication falsely casting doubt on the validity of plaintiffs' title, which (ii) was reasonably calculated to cause harm and was made maliciously or with reckless disregard for the truth, and (iii) resulted in special damages, causally related to the alleged tortious act and alleged with sufficient particularity to identify actual losses. Memorandum of Law in Support of Trustee's Motion to Dismiss ("Trustee Br."), *Dagny*, Adv. Proc. No. 25-01124, ECF No. 9 at 42 (citing *Mongiello v. HSBC Bank USA NA*, 2025 WL 674345, at *8 (S.D.N.Y. 2025)). The Trustee contends that the complaint satisfies none of these requirements.

This contention is borderline frivolous. The Trustee argues that the first of the three required elements is not satisfied because the UCC-1 was "an undeniably true statement—the Debtors' bankruptcy estates did, in fact, have claims to the Dagny real property as authorized by Rosenberg who was acting with either actual or apparent authority to do so." Trustee Br. at 42-43. This simply ignores plaintiffs' allegation, which is dispositive for purposes of this motion to dismiss, that Rosenberg had no interest in, and held no position at, Dagny Enterprises at any time since January 2017. Moreover, that allegation is supported by the state court ruling discussed in section II above.

The Trustee's contention that the second element is not satisfied—in particular, that plaintiffs have not adequately pleaded that the Trustee acted with reckless disregard for the truth—is equally meritless. This contention ignores the two letters that plaintiffs sent the Trustee, in December 2023 and July 2024, informing him that Rosenberg had no interest in Dagny Enterprises and citing the state court's ruling to that effect. Each of these letters put the Trustee on notice not only that his understanding of the facts was unfounded, but that a recent court decision had so held, making it reckless for the Trustee to leave his UCC filing in place without investigating whether it

rested on a proper legal foundation. Neither of the Trustee's two briefs in support of his motion to dismiss makes any genuine attempt to respond to this point.

The Trustee's contention that the complaint fails to satisfy the third element, special damages, fares little better. The complaint alleges that, as a direct result of the false UCC-1 filing, Dagny Enterprises was unable to refinance the property's mortgage when it matured in December 2024. While this sort of damage differs from the sort most commonly alleged in connection with a slander of title claim—that the false filing prevented a sale to a particular purchaser—it is an equally concrete type of harm, and the Court sees no reason why it is not equally sufficient to sustain the claim.[22]

Finally, the Trustee contends, in a footnote, that plaintiffs' slander of title claim is barred by the one-year statute of limitations for slander claims under New York law, *see* N.Y. C.P.L.R. 215(3). Citing several Southern District of New York decisions, the Trustee argues that this statute began to run on the date of the false filing—March 2023, more than two years before the August 2025 filing of the complaint. *See Aleem v. Experience Hendrix, L.L.C.*, 2017 WL 3105870, at *7 (S.D.N.Y. 2017); *Reach Music Pub., Inc. v. Warner/Chappell Music, Inc.*, 2011 WL 3962515, at *6 (S.D.N.Y. 2011), *amended in other respects on denial of reconsideration by* 2012 WL 695461 (S.D.N.Y. 2012).

The Court concludes that this argument, too, lacks merit, because the one-year statute of limitations for slander of title does not begin to run until plaintiffs incur special damages. This is

[22] It is true that the complaint does not specify the harms that resulted from Dagny Enterprises' inability to refinance its mortgage. However, plaintiffs provide a detailed list of such harms in their brief in opposition to the motion to dismiss. Plaintiffs' Memorandum of Law in Opposition to Trustee Motion to Dismiss, *Dagny*, Adv. Proc. No. 25-01124, ECF No. 20 at 34-35. Even if details of this sort were required to be pleaded to satisfy the special damages element of a slander of title claim, it would serve no useful purpose to dismiss this complaint for failure to allege these details. Any such dismissal would be with leave to amend, and the amended complaint could readily cure any arguable deficiencies by adding the details set forth in plaintiffs'brief.

the holding of a more recent Southern District of New York decision, which considered and rejected the reasoning of the two cases just cited. *See Wei Su v. Sotheby's, Inc*., 2019 WL 4917609, at *3 (S.D.N.Y. 2019). As the *Wei Su* court noted, the *Aleem* decision on this issue rested on nothing more than a citation to *Reach Music*, "which in turn [had] cite[d] state law about slander, not slander of title," and had followed state case law holding that the statute of limitations for slander runs from the time of the allegedly slanderous statements. *Wei Su*, 2019 WL 4917609, at *3 n.2. In so doing, *Reach Music* overlooked a key difference between slander and slander of title:

> Likening slander-of-title claims to ordinary slander claims, for purposes of determining the limitations period, is foreclosed by the New York Court of Appeals' decision in *Rosenbaum* [*v. City of New York*, 8 N.Y.3d 1 (2006)]. *See* 8 N.Y.3d at 12 ("Special damages are an element of a cause of action for slander of title based upon the recording of an unfounded claim, and the cause of action does not arise until special damages actually result.").

*Id.*

Following *Wei Su*, the Court holds that the statute of limitations for plaintiffs' slander of title claim did not begin to run until December 2024, when Dagny Enterprises was unable to refinance its mortgage. Plaintiffs filed the complaint less than one year later, within the one-year statute for slander of title claims.

For these reasons, the Court will deny the Trustee's motion to dismiss plaintiffs' thirteenth claim.

## VI. Plaintiffs' Claim For Leave to Pursue the Trustee's Bond (Nineteenth Claim)

Plaintiffs' nineteenth claim seeks authorization to commence an action against Hartford Fire Insurance Company ("Hartford") on the bond issued in connection with the appointment of the chapter 11 trustee for the Debtors' jointly administered estates.

This claim is barred by the two-year statute of limitations created by section 322(d) of the Bankruptcy Code. Section 322(d) provides that "[a] proceeding on a trustee's bond may not be

commenced after two years after the date on which such trustee was discharged." 11 U.S.C. § 322(d) Plaintiffs filed their complaint in August 2025, more than three years after the February 2022 discharge of the Debtors' chapter 11 trustee.

Plaintiffs' only response is to raise a new claim: that because the chapter 11 cases were reopened in January 2024, the Trustee should be required to post a new bond. This suffers from multiple defects. In the first place, this claim was not asserted in the complaint, nor do plaintiffs request leave to amend the complaint to add this claim. And even if the Court were inclined to overlook this procedural flaw and treat plaintiffs as having implicitly requested leave to amend, amendment would be denied because the proposed claim clearly lacks merit. No chapter 11 trustee was appointed following the reopening of the cases. Rather, the estates ceased to exist on the effective date of the plan (February 23, 2022), and from that date on, the Trustee has been serving only as Creditor Trustee, not as chapter 11 trustee. By its plain terms, section 322 requires a bond only for "a person selected . . . to serve as trustee in a case." 11 U.S.C. § 322(a). Because no chapter 11 trustee was appointed upon the reopening of these bankruptcy cases, section 322(a) did not require the posting of a bond, and no new bond was posted.

The Court will therefore dismiss plaintiffs' nineteenth claim with prejudice.

**VII. Plaintiffs' Claims Against Flagstar (Sixteenth, Seventeenth & Eighteenth Claims)**

The complaint asserts three claims against Flagstar based on transactions involving two Rosenberg-affiliated entities, Alrose Patchogue and Alrose 32. Plaintiffs allege that Hart removed Rosenberg as manager of both entities for cause in August 2023 and then delivered resolutions to Flagstar, the companies' bank, directing it to remove Rosenberg as authorized signatory for their bank accounts. Flagstar refused to honor those resolutions and continued to allow Rosenberg to access the accounts for several more months. As a result, he was able to make more than $300,000 in unauthorized withdrawals. This allegedly caused both companies to have insufficient cash to

pay their mortgage obligations, leading to a cascade of further harms, including a bankruptcy filing by Alrose Patchogue.

Flagstar has moved to dismiss these claims, contending that the Court is without jurisdiction to hear them. The Court agrees.[23] The starting point for the analysis is 28 U.S.C. § 1334, the statute that gives district courts—and by extension, bankruptcy courts, as units of those courts—jurisdiction over bankruptcy cases and proceedings. Section 1334 provides as follows:

> (a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
>
> (b) . . . [T]he district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

As is well known, these provisions confer several distinct forms of bankruptcy jurisdiction. Bankruptcy courts have exclusive jurisdiction over bankruptcy cases themselves. 28 U.S.C. § 1334(a). In addition, bankruptcy courts have nonexclusive jurisdiction over bankruptcy proceedings that (i) "arise under" the Bankruptcy Code, (ii) "arise in" a bankruptcy case, or (iii) are "related to" a bankruptcy case. 28 U.S.C. § 1334(b). *See Paul v. Yakubova (In re Yakubova)*, 2026 WL 1246576, at *5 (Bankr. S.D.N.Y. 2026).

[23] The Court therefore need not rule on the two other grounds for dismissal of these claims advanced by Flagstar: that plaintiffs lack standing to assert the claims, and that the Court should abstain from hearing the claims because Hart is prosecuting identical claims against Flagstar in her 2024 state court suit. The Court notes, however, that if it did have jurisdiction over plaintiffs' claims against Flagstar, it would be inclined to abstain from hearing those claims, given Hart's parallel state court suit against Flagstar.

The claims against Flagstar do not fall within any of these categories. The Court plainly does not have either "arising under" jurisdiction[24] or "arising in" jurisdiction over these claims.[25] Nor do these claims fall within the Court's "related to" jurisdiction. "'Related to' proceedings are those where the 'outcome [of the proceeding] might have any conceivable effect on the bankrupt estate.'" *Yakubova*, 2026 WL 1246576, at *5 (quoting *Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d Cir. 2011)). Plaintiffs' claims against Flagstar are claims by nondebtors against other nondebtors. Plaintiffs have identified no conceivable effect, nor is the Court aware of any, that those claims could have on the Creditor Trust—let alone any conceivable effect on the Debtors' estates, which ceased to exist when the Debtors' plan became effective. The Court therefore lacks "related to" jurisdiction over those claims.

That leaves one final possible category of jurisdiction: supplemental jurisdiction under 28 U.S.C. § 1367. As a threshold matter, the case law is divided over whether bankruptcy courts, as distinct from district courts, can exercise supplemental jurisdiction. The Second Circuit has stated, in passing and without further discussion, that bankruptcy courts can exercise jurisdiction "under principles of supplemental jurisdiction" pursuant to 28 U.S.C. § 1367. *Klein v. Civale & Trovato, Inc. (In re Lionel Corp.)*, 29 F.3d 88, 92 (2d Cir. 1994). However, a subsequent decision by the Fifth Circuit reached a contrary conclusion. *See Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562, 571 (5th Cir. 1995) (holding that "bankruptcy courts may not exercise supplemental jurisdiction").

---

[24] "It is widely recognized that a proceeding 'arising under title 11' is one that involves one or more causes of action created by the Bankruptcy Code." *Yakubova*, 2026 WL 1246576, at *5 (citing *Worldview Ent. Holdings Inc. v. Woodrow*, 611 B.R. 10, 16 (S.D.N.Y. 2019) and H.R. Rep. No. 95-595, at 445 (1977)). The causes of action against Flagstar arise under state law and do not involve causes of action created by the Bankruptcy Code.

[25] "'[A]rising in' proceedings are those 'that are not based on any right expressly created by title 11, but nevertheless, would have no existence out of the bankruptcy.'" *Yakubova*, 2026 WL 1246576, at *5 (citing *Baker v. Simpson*, 613 F.3d 346, 351 (2d Cir. 2010)). The causes of action against Flagstar clearly do exist outside of bankruptcy; indeed, as noted, Hart is currently asserting these same claims against Flagstar in her 2024 state court suit.

Reviewing these decisions, a district court in the Southern District of New York has concluded that, although "there is an inter-circuit conflict on this issue, this Court is bound by *Lionel*'s holding that bankruptcy courts may exercise supplemental jurisdiction under § 1367(a)." *In re Cavalry Constr., Inc.*, 496 B.R. 106, 115 (S.D.N.Y. 2013).

However, even assuming that bankruptcy courts can exercise supplemental jurisdiction, the requirements for doing so are not satisfied here. Supplemental jurisdiction extends to claims that "form part of the same case or controversy"—that is, that "derive from a common nucleus of operative fact"—as claims over which the Court has original jurisdiction. *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011) (internal quotation marks and citation omitted); *see also* 28 U.S.C. § 1367(a). The only claims over which the Court has original jurisdiction are the claims against the Creditor Trust and the Trustee—and plaintiffs' claims against Flagstar are entirely unrelated to those claims. The claims against Flagstar rest entirely on a limited set of alleged facts: Flagstar's refusal to remove Rosenberg as an authorized signatory for Alrose Patchogue and Alrose 32's bank accounts. None of the claims against the Creditor Trust and the Trustee involve those facts, and therefore no basis exists for supplemental jurisdiction.

Accordingly, the Court lacks jurisdiction over the claims against Flagstar, and the Court will dismiss those claims with prejudice.

**VIII. The Trustee's Request for Sanctions**

The Trustee asks the Court to sanction plaintiffs, pursuant to 28 U.S.C. § 1927, for their supposed filing of a frivolous complaint. Having found three of plaintiffs' claims to be legally sufficient, the Court sees no basis for an award of sanctions. Moreover, while the Court believes that some of plaintiffs' claims and arguments were ill-considered, the same can be said for a

number of the arguments advanced by the Trustee. The Court hopes that, in future filings, both sides will take more care to vet the arguments they choose to advance.[26]

## CONCLUSION

The Court will (i) grant the Trustee's motion to dismiss in part, deny that motion in part, and stay further proceedings on plaintiffs' second and third claims, all as set forth above; (ii) grant Flagstar's motion to dismiss in its entirety; and (iii) continue Hart's administrative expense motion for further consolidated proceedings consistent with this decision.

The parties are directed, by two weeks from today, (i) to settle an order consistent with this decision, and (ii) to file an agreed order setting a schedule for further consolidated proceedings in this adversary proceeding and Hart's administrative expense motion. The Court will hold an initial pretrial conference in these consolidated proceedings, by Zoom, at 4:00 p.m. on September 29, 2026 or as soon thereafter as counsel are available.

Dated: New York, New York
September 10, 2026

/s/ Philip Bentley
Hon. Philip Bentley
United States Bankruptcy Judge

[26] In this decision, the Court has addressed each of the principal arguments advanced by the parties with respect to the various pending issues. The Court has considered and rejected each of the parties' other arguments.